*In re* MIGUEL A. DEYNES SOTO.

*Número:* 7131          *Resuelto:* 28 de junio de 1996

336

*Carlos Lugo Fiol, Procurador General,* e *Yvonne Casanova Pelosi, Procuradora General Auxiliar,* querellantes.

— o —

Voto disidente emitido por el Juez Asociado Señor Fuster Berlingeri.

I

En el caso de autos, el Procurador General de Puerto Rico, por iniciativa propia, presentó ante nos una breve querella contra el abogado Miguel A. Deynes Soto. Aducía someramente que el abogado querellado se había declarado culpable de violar el inciso (k) del Art. 216 del Código Penal, 33 L.P.R.A. sec. 4391(k) (delito grave), y que por ello procedía su separación indefinida del ejercicio de la profesión, conforme lo dispuesto en la Sec. 9 de la Ley de 11 de marzo de 1909 (4 L.P.R.A. sec. 735).

El querellado contestó, por conducto de su representación legal, y alegó que, bajo la referida disposición estatutaria, la sanción de separación solicitada procede sólo si: (a) el delito grave se cometió en conexión con el ejercicio profesional, o (b) si implica depravación moral. Adujo que el delito tipificado en el inciso (k) del Art. 216, *supra* —descuido en la disposición de fondos públicos— no cumple con ninguna de las dos circunstancias aludidas, por lo cual no procedía el desaforo del querellado. Indicó que el delito grave respecto al cual se declaró culpable el querellado no se había cometido en conexión con el ejercicio de la profesión de abogado, sino en relación con sus funciones como legislador. Argumentó, además, que tampoco implicaba depravación moral, ya que se trata de un delito por actuación negligente.

El Procurador General replicó la contestación del querellado y adujo, en esencia, que la disposición estatutaria en cuestión le da "absoluta discreción" al Tribunal Supremo para imponer alguna sanción por la comisión de algún de-

lito grave, *aunque éste no implique depravación moral.* Lo determinante, alegó el Procurador General, es "si la conducta *por la cual fue encontrado culpable* dicho abogado merece ser sancionada o no ...". (Énfasis suplido.) Moción, pág. 2.

De lo anterior se desprende claramente cuál es la controversia medular ante nos en este caso. Consiste en determinar si, bajo la aludida Sec. 9 de la ley en cuestión, sólo es sancionable disciplinariamente aquella conducta grave *que implique depravación moral,* como aduce el querellado; o si, a discreción nuestra, es sancionable cualquier otra conducta delictiva grave, como alega el Procurador General. Para resolver esta controversia de umbral sólo es necesario que interpretemos cuál es el contenido y el alcance de la referida Sec. 9, bajo la cual se presentó la querella. Se trata, pues, de una típica cuestión de derecho.

Luego, si resolvemos que tiene razón el querellado en su planteamiento medular, tendríamos que decidir si tiene razón, además, en la otra parte de su argumento jurídico, de que el delito de descuido en la disposición de fondos públicos no implica depravación moral. El Procurador General parece admitir la validez de esta contención del querellado, al argumentar en su réplica que podemos sancionar a un abogado por la comisión de un delito grave aunque éste no implique depravación. Sin embargo, se trata de una cuestión de derecho que nos toca resolver, independientemente del criterio del Procurador General.

En cambio, si resolvemos que tiene razón el Procurador General en su planteamiento medular, tendríamos entonces que decidir si la supuesta concesión de "absoluta discreción" de la Sec. 9, *supra,* es jurídicamente válida; si lo es, nos toca dilucidar luego cómo debe ejercerse tal discreción, y si el descuido en la disposición de fondos públicos por un abogado debe sancionarse disciplinariamente.

Como puede observarse, las cuestiones identificadas antes, la medular y las que pueden surgir subsidiariamente,

son todas *controversias de derecho*. Se trata precisamente de cuestiones que le compete a este Tribunal resolver. Por ello, creo innecesaria y artificiosa la decisión de la mayoría de nombrar a un comisionado para atender la querella ante nos. No hay ante nos *controversias de hechos* que deban dilucidarse. La disputa entre el querellado y el Procurador General no gira en torno a cuál fue la conducta del abogado por la que éste se declaró culpable. Ambos parten del hecho de que ésta consistió en descuido en el desembolso de fondos públicos. En lo que difieren es en si tal conducta *per se* es sancionable o no. Lo dice claramente el propio Procurador General en la pág. 2 de su réplica:

> Es nuestra posición que la única controversia existente ... es la determinación de si la conducta por la cual fue encontrado culpable [el] abogado merece ser sancionada o no .... Moción, pág. 2.

En resumen, pues, como la querella concreta ante nos sólo presenta cuestiones de derecho, que podemos resolver sin auxilio de un comisionado, disiento del dictamen mayoritario.

## II

Como se sabe, en el ejercicio de nuestro poder inherente, este Tribunal puede disciplinar a un abogado por causas válidas, aunque éstas no estén incluidas en lo que contempla la Sec. 9 de la Ley de 11 de marzo de 1909, *supra*. *Colegio de Abogados de P.R. v. Barney*, 109 D.P.R. 845 (1980); *In re González Blanes*, 65 D.P.R. 381 (1945). Incluso, este Foro tiene autoridad para sancionar la conducta impropia de un abogado, aunque éste haya sido declarado inocente de cargos criminales basados en los mismos hechos que constituyen tal conducta impropia. *In re Soto López*, 135 D.P.R. 642 (1994).

A la luz de la normativa antes mencionada, este Foro *podría* tener autoridad para nombrar un Comisionado

para entender en la supuesta conducta del querellado que dio lugar a las denuncias inicialmente formuladas en su contra. Dichas denuncias imputaban unos hechos que configuran delitos graves más serios que el delito respecto al cual el querellado se declaró culpable. Nuestra autoridad para nombrar un comisionado en tal caso dependería de que se haya iniciado propiamente el procedimiento disciplinario establecido en la Regla 14 de nuestro Reglamento, 4 L.P.R.A. Ap. XXI-A.

Tradicionalmente hemos ejercido nuestra función disciplinaria en casos justificados, *cuando alguna persona jura una queja escrita contra un abogado o cuando el Procurador General o el Colegio de Abogados presenta la querella correspondiente.* Descansamos en la presentación de una queja jurada o querella por una parte interesada para poner en marcha el proceso disciplinario. No lo iniciamos nosotros. Ello no sólo ha sido nuestra práctica consuetudinaria, sino que, además, así lo dispone expresa y taxativamente nuestro propio Reglamento, que es el que ordena con plena autoridad el procedimiento disciplinario aplicable a los abogados y notarios.

Con frecuencia, en los medios del país, en misivas personales dirigidas a alguno de los Jueces de este Tribunal y hasta en las solicitudes de revisión o apelación, alegatos y otros escritos que se presentan ante nos, encontramos referencias directas a actos aparentemente impropios de abogados. Sin embargo, *tales referencias no nos mueven, de ordinario, a iniciar un procedimiento disciplinario.* Siguiendo fielmente nuestro propio Reglamento, actuamos sólo si ha mediado una queja jurada de una parte interesada, o una querella formal del Colegio de Abogados o del Procurador General. De esta forma, honramos el debido proceso de ley y evitamos el *riesgo de parcialidad* que conlleva ser "fiscal" y juez a la vez; es decir, querellante y juzgador a la vez.

En el caso de autos, nadie ha presentado ante nos una queja jurada escrita contra Deynes Soto. El Colegio de Abogados y el Procurador General tampoco han *presentado una querella basada en los hechos imputados en las denuncias iniciales formuladas contra este abogado.* La querella del Procurador General aquí se circunscribe clara y expresamente al delito concreto por el cual el querellado hizo alegación de culpabilidad. No incluye lo de las denuncias iniciales.

En efecto, hubiese sido, cuando menos, altamente reprochable que el Procurador General formulase una querella basada en los hechos imputados en las denuncias iniciales. Según consta de la propia querella del Procurador General en este caso, el Ministerio Público, al igual que el F.E.I., formaron parte del acuerdo con el querellado que dio lugar a la referida alegación de culpabilidad hecha por éste. Sería altamente impropio que el Ministerio Público, por un lado, forme parte de un acuerdo en virtud del cual se conviene no seguir adelante con el procesamiento de unas denuncias, y que, por otro lado, ese Ministerio, un año más tarde, pretenda encausar disciplinariamente al querellado por esas mismas denuncias. Ello violaría el acuerdo previo. Además, constituiría un engaño para con el querellado: inducirlo a llegar a un acuerdo, para escapar el deber de probar los hechos imputados más allá de toda duda razonable, para luego sorprenderlo con una querella ética mediante la cual el Ministerio Público busca entonces procesar disciplinariamente al querellado por las mismas denuncias, *con graves consecuencias para éste,* sin tener que satisfacer el *onus probandi* de la prueba penal.

En resumen, pues, como el Procurador General no ha presentado una querella a base de los hechos imputados en las denuncias iniciales contra el querellado, ni debe hacerlo, no hay base aquí para nombrar un Comisionado, aun en el supuesto de que la conducta del querellado imputada

en dichas denuncias pueda ser sancionable disciplinariamente. Sencillamente no se ha presentado ante nos la queja jurada o la querella correspondiente sobre tales bases, que es necesaria para que se ponga en marcha el proceso disciplinario y para que este Foro, entonces, pueda nombrar un Comisionado. Al hacer tal nombramiento en este caso, la mayoría del Tribunal viola su propio Reglamento y nuestra práctica tradicional al respecto, y ominosamente decide en este caso ser acusador y juez a la vez. Por ello, disiento.