EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | 2005 TSPR 40 |
|---|---|
| Miguel A. Deynes Soto | 163 DPR _____ |

Número del Caso: CP-1998-17

Fecha: 23 de marzo de 2005

Abogado del Peticionario:

Lcdo. Pedro E. Ortiz Álvarez
Lcda. Brenda A. Vera Miró
Lcdo. Alex M. López Pérez
Lcdo. Alejandro García Padilla
Lcdo. Arquelio Rivera Rodríguez
Lcdo. Juan M. Aponte Castro

Oficina del Procurador General:

Lcda. Yvonne Casanova Pelosi
Procuradora General Auxiliar

Lcdo. Gustavo A. Gelpi
Procurador General

Minnie H. Rodríguez López
Procuradora General Auxiliar

Materia: Conducta Profesional
(La suspensión será efectiva el 6 de abril de 2005 fecha en que se le notificó al abogado de su suspensión inmediata.)

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re

    Miguel A. Deynes Soto        CP-1998-17      Conducta
                                                            Profesional

PER CURIAM

San Juan, Puerto Rico, a 23 de marzo de 2005.

I

El Lcdo. Miguel Deynes Soto (en adelante, "el querellado" o "senador Deynes Soto") fue admitido al ejercicio de la abogacía el 15 de mayo de 1981. Posteriormente, el 28 de diciembre de 1983, le fue expedida la licencia para ejercer como notario.

Durante el período en que el querellado se desempeñaba como Senador del Estado Libre Asociado de Puerto Rico, su oficina fue objeto de una auditoría realizada por la Oficina del

Contralor.  De la prueba recopilada por dicho funcionario surgió, en esencia, que el querellado incurrió en la práctica de contratar empleados fantasmas. Específicamente, la auditoría reflejó que el querellado solicitó la ubicación de la Sra. Guillermina Exclusa Torres— con quien había procreado una hija— en la Comisión de Gobierno del Senado, pero que ésta nunca rindió labores para dicho cuerpo legislativo.  Además, que a pesar de que tenía en su nómina a la Srta. Gloria Feliciano como empleada regular, ésta no realizaba dichas funciones, dedicándose principalmente a cuidar la hija del querellado y de la Sra. Exclusa Torres, así como a realizar labores domésticas en la casa de esta última.[1] Asimismo, que empleó al Sr. Israel Vega Mercado— quien simultáneamente era empleado a sueldo de la empresa Saint James Security— [2] para que rindiera labores en sus

---

[1]  La Srta. Gloria Feliciano Sánchez recibió contratos de servicios profesionales del Senado de Puerto Rico para desempeñarse como oficinista del Senador Deynes Soto.  Dichos contratos cubrieron desde el 2 de abril de 1982 al 30 de junio de 1982; del 6 de mayo de 1983 al 30 de junio de 1983; y del 1 de julio de 1983 al 30 de junio de 1984.  El sueldo recibido por esos contratos fue de trescientos cincuenta (350) dólares mensuales.  *Véase Informe de Comisionado Especial*, a la pág. 6.

[2]  El Sr. Israel Vega Mercado estuvo asignado al cargo de Gerente del Área Oeste de la compañía Saint James Security Services desde el 1 de enero de 1986 hasta el 30 de septiembre de 1988.  A su vez, el susodicho ocupó puestos transitorios como ayudante especial del Senador Deynes Soto entre el 5 de junio de 1986 al 30 de junio del mismo año; del 6 de abril de 1987 al 30 de junio de 1987; y del 5 de octubre de 1987 hasta diciembre de 1988.  El sueldo quincenal que el Sr. Vega Mercado

continúa...

oficinas de Aguadilla y Mayagüez a base de un arreglo mediante el cual el Sr. Vega Mercado le daría la mitad de su sueldo al querellado. Como resultado de estos nombramientos, la auditoría concluyó que se pagaron sueldos y beneficios marginales provenientes del erario ascendentes a $183,924.00.

Durante el año 1993, como consecuencia del informe rendido por la Oficina Contralor, la Oficina del Fiscal Especial Independiente presentó acusaciones contra el querellado por sesenta y ocho (68) cargos de violaciones a los Artículos 201 [Apropiación Ilegal Agravada][3] y 166(a) [Aprovechamiento por Funcionario de Trabajos o

---

[2] continuación

devengaba de Saint James Security lo recibía en cheques oficiales de esa entidad. *Véase Informe del Comisionado Especial*, a la pág. 6.

[3] El Art. 166 del Código Penal, 33 L.P.R.A. § 4272, tipifica el delito de "Apropiación Ilegal Agravada" de la siguiente manera:

> [s]erá sancionada con pena de reclusión por un término fijo de diez (10) años toda persona que cometiere el delito previsto en la sección 4271 de este título ["Apropiación Ilegal"] con la concurrencia de cualquiera de las siguientes circunstancias:

> (a) Apropiándose de bienes o fondos públicos pertenecientes al Gobierno del Estado Libre Asociado de Puerto Rico, los municipios, agencias, corporaciones públicas, subdivisiones políticas y demás dependencias públicas o a entidades privadas de beneficiencia.

> ....

Servicios Públicos]⁴ del Código Penal de Puerto Rico, 33 L.P.R.A. § 3001 *et seq*. Sin embargo, tras varios trámites procesales, el querellado y el Ministerio Público llegaron a un acuerdo mediante el cual el primero se declararía culpable de tres (3) cargos por violación al Artículo 216(k) del Código Penal [Delito contra Fondos Públicos].⁵ Por cada uno de estos cargos se le impuso una pena de cuatro (4) años, a ser cumplidos concurrentemente con el beneficio de sentencia suspendida. Se le impuso, además, una pena de restitución por la cantidad de $48,000.00.

---

[4] El Código Penal tipifica este delito de la siguiente manera:

> [t]odo funcionario o empleado público que empleare en beneficio suyo o de un tercero trabajos o servicios pagados por el Gobierno del Estado Libre Asociado de Puerto Rico, los municipios, agencias, corporaciones públicas, subdivisiones políticas y demás dependencias, será sancionado con pena de reclusión por un término fijo de tres (3) años....33 L.P.R.A. § 4352.

[5] El Art. 216(k), 33 L.P.R.A. § 4391, dispone que:

> [s]erá sancionado con pena de reclusión por un término fijo de seis (6) años, pena de o multa que no excederá de diez mil (10,000) dólares, o ambas penas a discreción del tribunal, todo funcionario, empleado público o toda persona encargada de recibir, guardar, traspasar, desembolsar o en cualquier forma afectar fondos públicos, que realizare cualesquiera de los siguientes actos:
> ...
> (k) Descuidare o dejare de guardar o desembolsar caudales públicos en la forma descrita por ley.

No obstante el acuerdo, el 6 de marzo de 1998, el Procurador General presentó un Informe ante este Tribunal en el cual relacionó la conducta incurrida por el querellado. Debido a la seriedad de los hechos imputados, mediante Resolución de 9 de octubre de 1998, ordenamos a dicho funcionario formular la querella correspondiente.

El Procurador General cumplió con lo ordenado el 17 de diciembre de 1998. En el pliego presentado se le imputó al querellado haber incurrido en conducta violatoria a las disposiciones del Canon 38 de Ética Profesional, 4 L.P.R.A., Ap. IX, el cual obliga a todo abogado a conducirse de forma digna y honorable, tanto en el desempeño de su profesión como en su vida privada. El Procurador General fundamentó su querella en que, a su entender, la evidencia recopilada por la Oficina de la Contralor y por el Departamento de Justicia demuestra que el querellado se benefició personalmente de los dineros del Pueblo de Puerto Rico. Además, señaló que existe prueba suficiente para establecer que el querellado cometió los delitos imputados originalmente, y que a pesar de que éste nunca resultó convicto por los mismos, se puede concluir que incurrió en conducta delictiva de carácter grave y constitutiva de depravación moral.

Así las cosas, el 28 de enero de 1999, el querellado compareció ante nos mediante un escrito intitulado *Contestación a Querella*, en el cual negó las alegaciones

del Procurador General. Indicó, además, que los cargos por los que se declaró culpable no se relacionan con el ejercicio de la profesión legal y no implican depravación moral. El querellado presentó también la defensa de incuria y la de cosa juzgada, además de invocar que una acción disciplinaria en esa etapa le violaría su derecho a un debido proceso de ley y a la igual protección de las leyes.

El 26 de febrero de 1999, emitimos una Resolución nombrando al Lcdo. Elpidio Batista como Comisionado Especial.[6] Sin embargo, luego de aproximadamente dos (2) años fungiendo como tal, el Lcdo. Batista nos solicitó que lo relevásemos de dicha encomienda. Mediante Resolución de 30 de marzo de 2001, declaramos con lugar la petición del Lcdo. Batista y nombramos al Lcdo. Wilfredo Alicea López como su sustituto.

Tras las audiencias de rigor,[7] el 25 de febrero de 2003, el Comisionado Especial nos remitió su Informe

---

[6] *Véase además* In re Miguel A. Deynes Soto, 141 D.P.R. 335 (1996).

[7] La vista en sus méritos fue celebrada los días 22 de enero, y 12 y 28 de marzo de 2002. La prueba testifical desfilada por el Procurador General consistió del testimonio de siete (7) personas, a saber: Alma Enid Agosto García, Nelson R. Berríos Rivera, Norma Torres Rivera, Herbert González Valentín, Milagros Roldán Cortés, Arnaldo Vázquez Acevedo e Israel Vega Mercado. Por su parte la prueba testifical del querellado consistió de siete (7) testigos, a saber: Pedro Ojeda Castillo, Zoraida Polanco Clavell, Genaro F. Pagán Figueroa, Teodoro Ruiz Mercado, Edgardo Suárez, Lcdo. Miguel Hernández Agosto y su propio testimonio. Las

continúa...

sobre la querella de epígrafe.  En éste, el honorable Comisionado determinó que, basándose en la prueba testifical desfilada:

1. No puede inferirse con razonable certeza que la Sra. Guillermina Exclusa Torres no trabajaba en el Senado de Puerto Rico realizando labores en la Comisión de Gobierno que presidía el entonces Senador Mariano Ríos, ya que entendió que la prueba fue insuficiente.

2. Tanto de la prueba testifical como documental puede razonablemente concluirse que la Sra. Gloria Feliciano, aunque era empleada regular del Senado, apenas realizaba trabajos para dicho cuerpo. Asimismo, que se dedicaba principalmente a cuidar a la hija del querellado y a realizar labores domésticas en la casa de Guillermina Exclusa Torres.

3. Que Israel Vega Mercado rindió labores para el Senado de Puerto Rico en las oficinas del Senador Deynes Soto a base de un horario flexible e irregular pero más o menos continuo y periódico, por cuya labor recibía una compensación.  Igualmente, que entre el Sr. Vega Mercado y Deynes Soto hubo un acuerdo verbal mediante el cual el primero compartía su salario con el segundo.

4. Del testimonio ofrecido por los testigos del querellado se desprende que éste era un senador muy laborioso, capacitado y dedicado.

5. Aunque para la fecha de los hechos existían normas y procedimientos para reglamentar la asistencia del personal de las oficinas de distrito

_____

... 7 continuación

partes acordaron que el testimonio del Lcdo. Rafael Hernández Colón se habría de someter mediante declaración jurada.

de los senadores, éstas no se implementaban con rigurosidad y no se fiscalizaba la asistencia, sino que ésta se dejaba a la sana discreción de los propios senadores.

6.    Respecto al personal de campo utilizado por los senadores, era difícil y complicado fiscalizar la labor rendida, pues no se le requería asistir diariamente a las oficinas para registrar su asistencia, y que la rendición de labores de dicho personal también se dejaba a la sana discreción de los senadores.

7.    La transferencia de personal en las oficinas del Senado, así como la utilización del presupuesto de un senador para sufragar los gastos de otro, cuando el presupuesto de éste se le terminaba, estaba permitido en el Senado y no se consideraba una violación legal ni reglamentaria.

A base de estas determinaciones, el honorable Comisionado Especial recomendó imponerle al querellado una fuerte censura y suspenderlo temporeramente del ejercicio de la abogacía.

En desacuerdo con la recomendaciones vertidas, el Procurador General presentó un escrito en oposición. Explicó que existía prueba clara, robusta y convincente para concluir que el traslado que el querellado le gestionara a la Sra. Guillermina Exclusa Torres fue con el único objetivo de ocultar la realidad de que ésta no rendiría servicio alguno al Senado. Sobre ese aspecto, el Procurador General cuestionó cómo puede explicarse que ningún testigo pudo dar fe de que la susodicha trabajara alguna vez para el Senador Mariano Ríos Ruiz. Asimismo, sostuvo que la prueba en cuanto a las labores que

realizaba la Sra. Gloria Feliciano para beneficio personal del querellado, así como el hecho incontrovertido de que éste acordara con el Sr. Israel Vega Mercado compartir el sueldo del segundo, son prueba de que el querellado incurrió en actos constitutivos de apropiación ilegal de fondos públicos— delito grave que implica depravación moral. Por ello, nos pidió que eliminásemos las recomendaciones del honorable Comisionado Especial.

Tras solicitar y revisar la transcripción de la vista celebrada ante el Comisionado Especial, el querellado compareció mediante un escrito intitulado *Oposición del Querellado al Informe del Procurador General y Réplica a Comparecencia del Procurador General*, presentado ante nos el 8 de agosto de 2003. El querellado objetó algunas de las determinaciones alcanzadas por el Comisionado Especial, por entender que no se sostienen a base de un estándar de prueba clara, robusta y convincente. Del mismo modo, atacó la credibilidad del Sr. Israel Vega Mercado, catalogándolo como un "mentiroso patológico" que produjo su testimonio incriminatorio contra el querellado luego de que se le apercibiera de que sería procesado criminalmente. Asimismo, en cuanto a lo señalado sobre la Sra. Guillermina Exclusa Torres, el querellado indicó que no se pudo probar que ésta nunca hubiese trabajado en la oficina del ex Senador Mariano Ríos. Finalmente, el

querellado cuestionó nuestra facultad disciplinaria apuntando a que los hechos medulares de este caso difieren fundamentalmente de aquellos que dieron lugar a nuestra decisión en *In re Peña Peña*, res. el 27 de marzo de 2001, 153 D.P.R. ___, 2001 T.S.P.R. 49, 2001 J.T.S. 48.

Atendidos los argumentos esbozados por las partes, debemos determinar si, a base de los hechos expuestos, procede que sancionemos al querellado. Veamos.

II

Reiteradamente hemos establecido que todo asunto relacionado con la reglamentación del ejercicio de la profesión legal— como la admisión o la separación de sus miembros— es facultad inherente de este Tribunal. *In re Peña Peña*, *supra*; *In re Freites Mont*, 117 D.P.R 11 (1986); *In re Liceaga* 82 D.P.R. 252 (1961).

Hemos resuelto, además, que si se demuestra que la conducta del abogado no le hace digno de ser miembro de este foro, podemos ejercer nuestra facultad de desaforo aunque las actuaciones del abogado hayan surgido por causas no relacionadas con el ejercicio de su profesión, pues basta que tales actuaciones afecten las condiciones morales del querellado. *In re Peña Peña*, *supra*, a la pág. 3; *In re Astacio Caraballo*, 149 D.P.R. 790 (1999); *In re Belk Arce y Serapión*, 148 D.P.R 685 (1999); *In re Martinez y Odell*, 148 D.P.R 49 (1999); *In re Ramírez Ferrer* 147 D.P.R.607 (1999) *In re Rivera Cintrón*, 114

D.P.R. 481, 491 (1983); *Colegio de Abogados v. Barney*, 109 D.P.R 845 (1980).

Del mismo modo, es norma reiterada que los procedimientos disciplinarios ante este Tribunal son independientes de las acciones legales, ya sean criminales o civiles, que se deriven de la misma relación de hechos. *In re Peña Peña*, *supra*, a la pág. 2; *In re Acosta Grubb*, 119 D.P.R. 595 (1987);. Así pues, **el ejercicio de la jurisdicción disciplinaria del Tribunal Supremo no depende del resultado de un proceso criminal**, *In re Soto López*, 135 D.P.R. 642, 646 (1994),[8] como tampoco se limita por el hecho de que el abogado y el cliente transijan sus diferencias mediante un acuerdo en el cual el segundo se compromete a no presentar cargos éticos ante los foros pertinentes. *In re Acosta Grubb*, *supra*; *In re In re Pagán Ayala*, 117 D.P.R. 180, 187 (1986).

En cuanto a los abogados que se desempeñan como legisladores, hemos establecido que éstos deben observar una conducta que se adhiera a los mandatos éticos de la profesión. De hecho, hemos dicho que esta conclusión se refuerza por estar la labor legislativa revestida de gran interés público y por no desvincularse del todo del "quehacer legal." *In re Peña Peña*, *supra*, a la pág. 8.

---

[8] *Véase además Tribunal Examinador de Médicos v. Cañas Rivas*, res. el 23 de abril de 2001, 154 D.P.R. ___ (2001), 2001 T.S.P.R. 58, 2001 J.T.S. 60.

Asimismo, cuando una querella se ventila ante un Comisionado Especial, aunque nuestra tendencia general es a no alterar las determinaciones de hechos que éste emita, este Tribunal no está obligado a aceptar sus recomendaciones. *In re Peña Peña*, *supra*, a la pág. 7; *In re Astacio Caraballo*, *supra*, a la pág. 800; . Al evaluar la adopción de los hallazgos del Comisionado Especial, consideramos esencialmente si dichas determinaciones están sostenidas por la prueba testifical y documental. *Id*. Conforme a dicha evaluación, podemos adoptar el mismo, modificarlo e inclusive rechazarlo, aun en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Id.*

Finalmente, en cuanto a la carga probatoria requerida en un proceso disciplinario, en *In re Caratini Alvarado*, res. el 9 de marzo de 2001, 153 D.P.R.___, 2001 T.S.P.R. 46, 2001 J.T.S. 45, resolvimos que el criterio a utilizarse es el de prueba clara, robusta y convincente, no afectada por reglas de exclusión ni a base de conjeturas.[9]

A base de este marco jurídico, analizamos la controversia ante nos.

---

[9] Requerimos una carga probatoria más acuciosa que la mera preponderancia de la prueba toda vez que en estos procesos está en juego el título de un abogado y, por ende, su derecho fundamental a ganarse su sustento.

III

En el caso de marras, el Comisionado Especial expresó en su Informe que la prueba desfilada por el Ministerio Público no satisfizo el estándar requerido para probar las alegaciones de fraude relacionadas a la contratación de la Sra. Guillermina Exclusa Torres. No obstante, determinó que de la prueba vertida podía concluirse que la Srta. Gloria Feliciano, aunque era empleada regular del querellado, apenas realizaba trabajos para su oficina, y que se dedicaba principalmente a cuidar a la hija de éste. También, que el Sr. Israel Vega Mercado trabajaba con el querellado a base de un horario irregular y flexible, mientras detentaba un empleo en una empresa privada, y bajo acuerdo con el querellado para compartir su paga con éste. Así, luego de balancear estos hechos con otros atenuantes, el Comisionado Especial recomendó para el querellado una fuerte censura y la suspensión temporera de la abogacía.

El querellado, por su parte, sostiene que el Ministerio Público no probó las alegaciones respecto al acuerdo verbal entre él y el Sr. Israel Vega Mercado para que el segundo compartiera su sueldo con él. Arguye, además, que disciplinarlo en esta etapa— luego de que hizo alegación de culpabilidad por un delito menos grave que no implica depravación moral— viola su derecho a un debido proceso de ley. Por último, alega que los hechos

de este caso son fundamentalmente distintos a aquellos del caso *In re Peña Peña*, *supra*, ya que aquí supuestamente no se probó la existencia de empleados fantasmas. De conformidad, éste nos solicita el archivo de la querella. No tiene razón el querellado.

Primeramente, como expresáramos en la sección anterior, los procedimientos disciplinarios ante este Tribunal son independientes de las acciones legales, ya sean criminales o civiles, que se deriven de una misma relación de hechos. Por ende, contrario a lo que alega el querellado, su derecho al debido proceso de ley no se ve lesionado al ejercer nuestra jurisdicción disciplinaria en este asunto. Su argumento en cuanto a que el disciplinarlo se traduciría en la imposición de una doble pena (ya que cumplió una sentencia suspendida de cuatro (4) años por los delitos que se declaró culpable) es totalmente infundado.

En cuanto a los méritos de los cargos presentados, acogemos las determinaciones de hechos del Comisionado Especial pertinentes a la contratación fraudulenta de la Srta. Gloria Feliciano. Obra en autos prueba clara, robusta y convincente demostrativa de que ésta rindió labores domésticas en la residencia de la Sra. Guillermina Exclusa Torres, pagadas con fondos públicos, con el conocimiento y auspicio del querellado, quien se benefició personalmente del producto de dichas gestiones.

Igualmente, suscribimos aquellas determinaciones referentes a la contratación fraudulenta del Sr. Israel Vega Mercado. La prueba desfilada demuestra que el susodicho apenas rendía labores para la oficina senatorial del querellado, hecho que se refuerza al quedar probado que éste simultáneamente era empleado de la entidad Saint James Security. Además, resultó incontrovertido el hecho de que el querellado le solicitó compartir el sueldo como condición a su contratación y permanencia en el puesto.[10]

No obstante, rechazamos la determinación del honorable Comisionado Especial en cuanto a que la prueba no estableció que la Sra. Guillermina Exclusa Torres no hubiese laborado para la oficina del ex senador Mariano Ríos. Según consta en autos, las partes estipularon que el ex senador Mariano Ríos solicitó a la Oficina de Personal del Senado el traslado de la Sra. Exclusa Torres de la oficina del entonces senador Juan Rivera Ortiz a la suya, para todos los efectos de trabajo y presupuesto.[11] Conforme a ello, es de esperarse que la Sra. Exclusa Torres compareciera a su lugar de trabajo, y que sus compañeros fueran capaces de reconocerla e identificarla sin problema alguno. ***Sin embargo, de los testimonios en***

---

[10] Más aún, en su determinación de hechos número 16, el Comisionado concluyó que al dejar el Sr. Israel Vega Mercado su trabajo en Saint James Security, y solicitarle al querellado la totalidad de su sueldo, éste le dijo que si no podía darle la mitad que se buscara otro trabajo. *Véase Informe de Comisionado Especial*, a la pág. 12.

[11] *Véase Informe del Comisionado Especial*, a la pág. 6.

*autos, no surge que algún ex empleado del Sr. Mariano Ríos la conociera o que la recordara como ex compañera de trabajo.*

A esos efectos, la primera testigo del Procurador General, la Sra. Alma E. Agosto García, declaró que durante los años 1985 al 1987 trabajó para la oficina del ex senador Ríos en Guayama. Sin embargo, aunque identificó a la Sra. Norma Torres como su compañera de trabajo en dicha oficina, expresó que no conocía a la Sra. Guillermina Exclusa Torres.

El segundo testigo del Procurador General, Sr. Nelson R. Berríos Rivera, declaró que trabajó para el Sr. Mariano Ríos entre los años 1983 a 1987. Además, que durante esa época conoció a la Sra. Norma Torres, identificándola como la mano derecha del ex senador. *No obstante, indicó que el nombre de Guillermina Exclusa Torres no le era familiar.*

La tercera testigo del Procurador General fue la Sra. Norma Torres. Ésta declaró que nunca trabajó para el querellado, y que desempeño labores para el ex senador Mariano Ríos desde 1971 hasta 1992. Explicó que se enteró de que aparecía en la nómina del querellado a través de la prensa, y que en dos ocasiones durante ese período, el ex senador Mariano Ríos le presentó a la Sra. Exclusa Torres en unas reuniones políticas. A pesar de ello, expresó que nunca le constó que la susodicha fuese empleada del ex senador Ríos.

En suma, a base de estos testimonios es inescapable concluir que la Sra. Exclusa Torres era una virtual desconocida para los empleados del ex senador Mariano Ríos. Más aún, entre la evidencia admitida en este proceso figuró el expediente del Senado de Puerto Rico de la Sra. Exclusa Torres, del cual surge que su puesto con el ex senador Mariano Ríos conllevaba su presencia en el Senado. Siendo ello así, ¿cómo es posible que nadie pudo dar fe de que ésta trabajó alguna vez para dicho senador? Resolvemos, por consiguiente, que contrario a lo concluido por el honorable Comisionado Especial, existe prueba clara, robusta y convincente para establecer la Sra. Guillermina Exclusa Torres no desempeñó labores en la oficina del ex senador Mariano Ríos. Así, considerando que la Sra. Exclusa Torres tiene una hija con el querellado, es indiscutible que el sueldo que ésta cobraba por su empleo fraudulento en la oficina del Senador Mariano Ríos—puesto que consiguió gracias a las gestiones del mismo Senador Deynes Soto— benefició los intereses del querellado.

Por tanto, al evaluar la totalidad de la prueba presentada, concluimos que el querellado incurrió en la práctica de mantener y facilitar la contratación de empleados fantasmas mientras se desempeñó en el Senado de Puerto Rico. Peor aún, éste se benefició personalmente de dichas gestiones. Esta conclusión nos obliga a tomar las medidas más severas ya que, como expresáramos en *In*

*re Peña Peña*, *supra*, tal proceder constituye una corrupción del más dañino calibre, pues al incurrir en esas prácticas el querellado se aprovechó— o consintió a que otros se aprovecharan— de fondos pertenecientes al pueblo.

Aun aceptando el hecho de que en aquella época no existían controles suficientes, que muchas de estas prácticas eran generalizadas, o que el querellado fue un buen senador, ello no constituye paliativo suficiente ante la naturaleza de su conducta. Al participar de este esquema ilegal, el querellado incumplió con la ética profesional según antes expuesto.

En atención a lo anterior, se suspende inmediatamente por el término de seis (6) meses al Lcdo. Miguel Deynes Soto del ejercicio de la abogacía. Le imponemos a éste el deber de notificar a todos sus clientes de su inhabilidad de seguir representándolos e informar oportunamente de su suspensión indefinida a los foros judiciales y administrativos del País. Deberá, además, certificarnos dentro del término de treinta (30) días, a partir de la notificación de la sentencia que se adjunta, su cumplimiento con estos deberes, notificando también al Procurador General.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re

Miguel A. Deynes Soto          CP-1998-17          Conducta
                                                   Profesional

SENTENCIA

San Juan, Puerto Rico, a 23 de marzo de 2005.

Por los fundamentos antes expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, se suspende inmediatamente por el término de seis (6) meses al Lcdo. Miguel Deynes Soto del ejercicio de la abogacía. Le imponemos a éste el deber de notificar a todos sus clientes de su inhabilidad de seguir representándolos e informar oportunamente de su suspensión indefinida a los foros judiciales y administrativos del País. Deberá, además, certificarnos dentro del término de treinta (30) días, a partir de la notificación de la sentencia que se adjunta, su cumplimiento con estos deberes, notificando también al Procurador General.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López disiente por los mismos fundamentos expuestos en la Opinión disidente que emitiera en el caso de *In re Peña Peña,* res. el 27 de marzo de 2001, 153 D.P.R. ___, 2001 TSPR 49. El Juez Asociado señor Fuster Berlingeri disiente sin opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo