EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | 2007 TSPR 187 |
| Miguel A. Alverio Sánchez | 172 DPR _____ |

Número del Caso: CP-2005-14

Fecha: 27 de septiembre de 2007

Oficina del Procurador General:

       Lcda. Minnie H. Rodríguez López
       Procuradora General Auxiliar

Abogado de la Parte Querellada:

       Por Derecho Propio

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Miguel A. Alverio Sánchez          CP-2005-014

PER CURIAM

San Juan, Puerto Rico, 27 de septiembre de 2007.

I.

Relatamos los acontecimientos según surgen de las determinaciones de hecho del Informe del Comisionado Especial y del expediente.

El Lcdo. Miguel A. Alverio Sánchez (en adelante el licenciado Alverio Sánchez o el querellado) fue admitido al ejercicio de la abogacía y del notariado los días 20 de abril y 7 de mayo del año 1979, respectivamente.

El licenciado Alverio Sánchez, además de ser abogado y notario, funge como pastor y administrador de la Iglesia Cristiana Misionera Monte Sión, Inc. (en adelante la Iglesia), entidad que tiene sede en Arecibo, Puerto Rico. El 30 de

diciembre de 1999, obrando en calidad de notario, autorizó la escritura pública número 46, sobre *Ratificación de Permuta, Constancia de Compraventa y Agrupación.* En esa escritura, Santos Rivera Natal y la Iglesia ratificaron unos acuerdos previos sobre permuta, en torno a dos predios de terreno que habían pertenecido al primero. En la referida escritura se expresó que en el 1977, Rivera Natal permutó uno de los predios a la iglesia aludida. Igualmente, se expuso en el documento que el segundo de los predios le fue permutado a la misma iglesia en el 1977. Además, se dio constancia de la prestación recibida por Rivera Natal a cambio de los predios.

En la escritura referida también se hizo mención expresa de que la Iglesia era titular de otro predio, adquirido también mediante permuta en el año 1976. Se expresó, además, que en el 1998 los tres predios fueron mensurados y agrupados en una sola finca. Se describió dicha finca según resultó de la mensura y agrupación.

La comparecencia en la escritura pública indicaba que la Iglesia es una corporación organizada y existente bajo las leyes del Estado Libre Asociado de Puerto Rico. En representación de la Iglesia compareció la Tesorera de la organización, Carmen Ortiz Ginés. Dicha comparecencia fue autorizada mediante una Resolución Corporativa, juramentada ante el querellado, en su rol de notario.

A finales del 1999 la Iglesia comenzó a construir una estructura de cemento en la finca de su propiedad que resultó de la agrupación aludida anteriormente. En el lugar

ya enclavaba una estructura dedicada a iglesia. Al comenzar la nueva construcción, Miguel A. Robles Lugo (en adelante Robles Lugo o el quejoso) presentó una querella ante el Tribunal Municipal de Arecibo, mediante la cual adujo que la construcción bloqueaba una alegada servidumbre de paso a favor de otra finca que era propiedad suya y de sus familiares. El Tribunal Municipal procedió entonces a expedir una orden provisional paralizando la construcción referida. El tribunal ordenó también la celebración de una inspección ocular, la cual se llevó a cabo el 13 de diciembre de 1999. Finalizada la inspección, el juez indicó que resolvería con prontitud la controversia. Al no hacerlo, la Iglesia instó entonces un procedimiento ordinario de acción negatoria de servidumbre, en el que solicitó también un remedio provisional.[1] El quejoso y sus familiares figuraron como demandados del pleito referido.

Los licenciados Alverio Sánchez y Ángel Adorno Coira comparecieron a dicho pleito como representantes legales de la Iglesia. Durante el trámite judicial del caso, a petición del quejoso, el licenciado Alverio Sánchez fue descalificado, por razón de ser el pastor de la Iglesia y de ser un posible testigo. El querellado no contendió la descalificación, aunque entendió que era errónea en derecho, pues la Iglesia contaba con otro abogado.

El 30 de agosto de 2002 el Tribunal de Primera Instancia dictó una sentencia en la cual resolvió que la finca de la Iglesia no estaba "gravada con servidumbre

---

[1] Caso CAC 2000-0001.

alguna". Inconformes, Robles Lugo y sus familiares recurrieron mediante un recurso de apelación al otrora Tribunal de Circuito de Apelaciones. Mediante una sentencia emitida el 24 de marzo de 2003, el foro intermedio confirmó el dictamen apelado. Aún inconformes, los demandados acudieron ante este tribunal mediante un recurso de *certiorari*, mas denegamos expedir el recurso por craso incumplimiento con el Reglamento del Tribunal.

En trámites separados, pero relacionados también a los mismos hechos del caso aludido, el 7 de diciembre de 2000 la Administración de Reglamentos y Permisos (en adelante ARPE) expidió un permiso de uso a favor de la Iglesia. Siete meses más tarde, el quejoso solicitó a ARPE la reconsideración de esa determinación, la cual fue denegada. El quejoso entonces recurrió ante la Junta de Apelaciones Sobre Construcciones y Lotificaciones para impugnar el permiso de uso concedido, pero dicho foro administrativo desestimó el recurso por falta de jurisdicción. De esa determinación, recurrió Robles Lugo ante el entonces Tribunal de Circuito de Apelaciones, el cual, mediante una sentencia emitida el 28 de agosto de 2002, desestimó el recurso, también por falta de jurisdicción.

Posteriormente, el 19 de diciembre de 2003 Robles Lugo presentó y juramentó una queja ante la secretaría de este Tribunal Supremo de Puerto Rico. En dicha queja, solicitó un remedio ajeno a los procedimientos disciplinarios. Específicamente, el quejoso pidió que se le reconociera su alegado derecho a la servidumbre de paso previamente

reclamada. Además, solicitó que se dictara cualquier otro remedio que procediera en derecho. La queja fue referida al Procurador General, quien, el 23 de noviembre de 2004, presentó un informe en el cual concluyó que existía "prueba de posible violación" a los cánones 21 y 38 de Ética Profesional, 4 L.P.R.A. Ap. IX c. 21 y c. 38, y a la fe pública notarial, así como a la Regla 5 del Reglamento Notarial, 4 L.P.R.A. Ap. XXIV R.5. Luego de recibir una extensa *Réplica al Informe del Procurador General* de parte del querellado, el Tribunal ordenó la presentación de la correspondiente querella.

En cumplimiento con lo ordenado, el 8 de julio de 2005 el Procurador General presentó una querella, en la que formuló tres cargos en contra del licenciado Alverio Sánchez, por entender que éste había violentado: (1) el canon 21 de Ética Profesional, 4 L.P.R.A. Ap. IX c. 21, "al actuar en el caso CAC 2000-0001 y al otorgar y juramentar documentos como notario en asuntos en los cuales claramente tenía un interés personal"; (2) el canon 38 de Ética Profesional, 4 L.P.R.A. Ap. IX c. 38, al no haber evitado la apariencia de conducta impropia; y (3) la fe pública notarial y la Regla 5 del Reglamento Notarial, 4 L.P.R.A. Ap. XXIV R.5, al haber "violentado los principios de fe pública notarial y la imparcialidad... al actuar en documentos cuyo contenido le atañ[ía] personalmente, como la Escritura Núm. 46 de 30 de diciembre de 1999 y la Resolución Corporativa".

Por su parte, el 29 de julio de 2005 el licenciado Alverio Sánchez presentó su contestación a la querella, en la cual negó todos los cargos que se le imputaron. Posteriormente, el 17 de febrero de 2006 ordenamos al ex Juez del Tribunal de Primera Instancia, Enrique Rivera Santana, a que, en presencia de las partes y en calidad de Comisionado Especial, recibiera prueba y rindiera un informe con sus determinaciones de hechos y las recomendaciones que estimase pertinentes. Concluida su encomienda, el Comisionado Especial presentó el informe requerido. El 25 de octubre de 2006 el caso quedó sometido para nuestra adjudicación. Pasamos a resolver.

II.

En la queja presentada el 19 de diciembre de 2003, Robles Lugo hizo una elaboración detallada sobre su posición en cuanto a asuntos que él estimó que estaban relacionados con la queja. No obstante, como acertadamente señaló el Comisionado Especial en su Informe, la mayor parte de su exposición estuvo relacionada con asuntos que fueron dilucidados en procedimientos ante el Tribunal de Primera Instancia y ante los foros apelativos. Sólo tangencialmente el quejoso tocó aspectos vinculados con el proceder ético del querellado.

Basta examinar la súplica de la queja para que quede evidenciado que lo que realmente persigue el quejoso con este procedimiento es que se le abra un foro adicional para conseguir lo que hasta ahora no ha logrado en el foro

judicial ni administrativo. En dicha súplica el pedido principal era que "muy respetuosamente se nos deje libre el acceso para empezar a rehabilitar la finca". Solicitó también que se le "conceda cualquier otro remedio que proceda en derecho...". Así, pues, lo que persigue el quejoso con esta acción es utilizar el procedimiento disciplinario como mecanismo para obtener un remedio que no consiguió en litigios judiciales. Ese propósito aflora también en otros escritos presentados ante este Tribunal en los que siempre surge la súplica de que se le "proteja los derechos a los demandados" en el caso CAC 2000-0001 del Tribunal de Primera Instancia, Sala de Arecibo. De este modo, puede inferirse que éste es un caso en el que el quejoso interesa usar el poder de este Tribunal para "saciar la sed de venganza que tiene contra un miembro de la profesión". Como se sabe, ese no es el propósito de las acciones disciplinarias. *In re* Vélez Lugo, res. el 13 de agosto de 2004, 162 D.P.R. ____ (2004), 2004 TSPR 135, 2004 JTS 140.

Independientemente del propósito que persiga el quejoso, este Tribunal tiene la autoridad para examinar la conducta de los abogados y los notarios en todos los aspectos relacionados con su quehacer profesional, dado el poder inherente que tiene para ello. K-Mart Corp. v. Walgreens of P.R., Inc., 121 D.P.R. 633 (1988); *In re* Añeses, 117 D.P.R. 134 (1986). Así pues, hay que examinar las actuaciones del querellado a la luz de los cargos que se le imputaron, aunque, como se señaló en *In re* Vélez

Lugo, *supra*, teniendo presente que este Tribunal ejerce su autoridad disciplinaria no en forma irrestricta, ni como si fuera "verdugo de la clase togada".

Los tres cargos que se le imputaron al licenciado Alverio Sánchez están vinculados a su actuación como notario, al otorgar la escritura pública número 46 antes aludida, y al juramentar la Resolución Corporativa que autorizaba a la Tesorera de la Iglesia a comparecer al otorgamiento del documento.

Al formular los cargos referidos, el Procurador General, en su Informe, partió de dos premisas equivocadas. Se indicó en el Informe que el querellado "fue el notario de la Escritura de Compraventa Núm.46 de 1999, mediante la cual la Iglesia Cristiana Misionera adquirió el terreno en controversia...". Un examen detenido de la escritura referida refleja que la misma no daba constancia de que la Iglesia adquiriera terreno alguno. El terreno había sido adquirido con anterioridad, por lo que la Iglesia ya era dueña del mismo. En el documento sólo se ratificó una transacción de permuta, que no se había elevado a escritura pública.

La segunda incorrección en los argumentos del Procurador General gira en torno al registro de la Iglesia como corporación. Se adujo que como la Iglesia no estaba incorporada, el querellado, como pastor de la misma, al fungir como notario en el documento, actuaba en beneficio propio. Por consiguiente, el Procurador General entendió que el querellado había violentado el canon 21 de Ética

Profesional, el cual proscribe situaciones en las cuales un abogado pueda tener intereses encontrados con su cliente. Esos conflictos de intereses pueden deberse a: (1) intereses personales del abogado; (2) incompatibilidad de funciones del abogado; (3) conflicto por la representación simultánea adversa de clientes; o (4) conflicto por la representación sucesiva adversa de clientes. 21 L.P.R.A. Ap. IX C. 21. Sin embargo, lo cierto es que la Iglesia sí estaba incorporada desde el 1987, como parte del "Movimiento de Iglesias Cristianas Misioneras, Inc.". Por consiguiente, el notario no actuó en beneficio propio, sino que actuó para beneficio de la Iglesia, que era una entidad separada e independiente. En *In re* Rojas Flores, 107 D.P.R. 564 (1978), se resolvió que un albacea, que era notario, podía otorgar una escritura pública sobre bienes sujetos al albaceazgo, siempre y cuando él no fuera parte y la escritura no tuviera disposición alguna a su favor. Analógicamente, aplicamos lo allí resuelto al caso de autos. En el presente caso, aunque el querellado era pastor de la Iglesia, la escritura no contenía ninguna disposición a su favor. Los bienes objeto del documento tampoco le pertenecían. Adviértase, además, que, desde el 1976 hasta el presente, la Iglesia ha tenido por lo menos tres pastores diferentes. Los predios de terreno, que fueron agrupados en uno sólo, no cambiaron de titular al cambiar el pastor, sino que siguieron perteneciendo a la Iglesia.

Valga resaltar también que la Iglesia no adquirió bien alguno a través de la escritura referida, sino que sólo

ratificó unas adquisiciones previas. El único beneficio adicional obtenido por la Iglesia fue la agrupación formal de los tres predios de terreno y el hecho de poder contar con un documento público que evidenciara el título sobre el inmueble.

El Procurador General entendió también que el licenciado Alverio Sánchez había quebrantado los principios de la fe pública notarial y la Regla 5 del Reglamento Notarial "al haber actuado en documentos cuyo contenido le atañ[ía] personalmente". El Procurador General vinculó tal cargo a la descalificación del licenciado Alverio Sánchez en el pleito sobre acción negatoria de servidumbre.

La Regla 5 del Reglamento Notarial regula la función dual del profesional del derecho, como abogado y como notario. 4 L.P.R.A. Ap. XXIV R. 5. Dicha regla prohíbe a un notario autorizante de un documento actuar, posteriormente, como abogado de una de las partes otorgantes en un litigio para exigir las contraprestaciones a las que se haya obligado la otra parte en el documento. Ese no es el caso que surge de la queja presentada en contra del querellado. En este caso no ha habido pleito alguno entre los otorgantes del documento, sino que el pleito que se ventiló sobre la acción negatoria de servidumbre fue entre uno de los otorgantes y unos terceros.

La citada regla prohíbe también que un notario represente a un cliente en una litigación contenciosa, y a la vez sirva como notario en el caso, debido al posible conflicto de intereses o a la incompatibilidad que pueda

dimanar del mismo. Interpretando esa regla, hemos recalcado que es impropio que un abogado combine funciones de notario y de abogado en un mismo asunto. *In re* Chiques Velázquez, res. el 25 de febrero de 2004, 161 D.P.R. ____ (2004), 2004 TSPR 28, 2004 JTS 38. Los hechos del procedimiento que aquí nos compete no enmarcan dentro de esa prohibición. El querellado representó a la Iglesia, hasta que fue descalificado, en el caso de acción negatoria de servidumbre. Sin embargo, no sirvió a la vez como notario.

Por otra parte, el hecho de que fuera abogado de la Iglesia, en un caso instado por ésta en contra de un tercero, en el que él pudiera ser testigo, no necesariamente crea el conflicto o la incompatibilidad que la Regla 5 del Reglamento Notarial vislumbra. El propio canon 22 de Ética Profesional (por el cual no se imputó cargo alguno), que regula lo relativo a la actuación de un abogado de una parte como testigo en un caso, no ordena en forma absoluta la renuncia de la representación legal por un abogado, ante la posibilidad de que surja esta situación.

En cuanto a la alusión que hizo el Procurador General sobre la descalificación del querellado como representante legal de la Iglesia, queremos reiterar que la descalificación de un abogado por parte de un tribunal de instancia no es una medida disciplinaria. La facultad de disciplinar es exclusiva del Tribunal Supremo. K-Mart Corp. v. Walgreens of P.R., Inc., *supra*.

En resumen, la prueba presentada en este procedimiento no establece que el querellado haya incurrido en el alegado conflicto de interés que se le imputó bajo el primer cargo. Tampoco el notario tenía interés personal en el asunto objeto de la transacción que, como hemos indicado, se trató de una ratificación de unos acuerdos previos sobre unas permutas de bienes y sobre la agrupación de unos predios de terreno, todo ello a favor de una corporación sin fines de lucro.

Por último, al querellado se le imputó haber infringido el canon 38 de Ética Profesional al haber creado la apariencia de conducta impropia. El canon referido dispone, en su parte pertinente, que "el abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y la dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia". 4 L.P.R.A. Ap. IX C.38.

Concluimos que la documentación es insuficiente para sostener dicho cargo. El hecho de que el querellado fuera pastor y administrador de la Iglesia, no basta para dejar establecida la apariencia de impropiedad. Nótese que, aunque se trate de apariencia, el cargo debe quedar establecido por prueba clara, robusta y convincente, que es la norma que impera sobre el *quantum* de prueba para procedimientos disciplinarios. *In re* Rodríguez Mercado, res. el 15 de septiembre de 2005, 165 D.P.R. ____ (2005), 2005 TSPR 144, 2005 JTS 149; *In re* Deynes Soto, res. el 23

de marzo de 2005, 164 D.P.R. _____ (2005), 2005 TSPR 40, 2005 JTS 45. Ese *quantum* no surge de los documentos sometidos ante nuestra consideración. Como es sabido, "la apariencia de conducta impropia tiene que sostenerse sobre la fuerte impresión que se da al público de la violación efectiva de alguno de los cánones de Ética Profesional". *In re* Meléndez Figueroa, res. el 15 de noviembre de 2005, 165 D.P.R. _____ (2005), 2005 TSPR 177, 2005 JTS 182. Esa fuerte impresión no quedó establecida en el presente caso. Así lo entendió también el Comisionado Especial.

III.

Por todo lo anterior, acogemos la recomendación del Comisionado Especial, y desestimamos y archivamos la querella instada en contra del querellado, por entender que éste no cometió las infracciones imputadas. Además, estamos convencidos, como indicamos antes, de que la queja que dio origen a este procedimiento constituye realmente un empeño de venganza del quejoso en contra del licenciado Alverio Sánchez, por razón de no haber prevalecido en los foros judiciales y administrativos en acciones en las que la Iglesia que pastoreaba el querellado era parte.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Miguel A. Alverio Sánchez          CP-2005-014

SENTENCIA

San Juan, Puerto Rico, 27 de septiembre de 2007.

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte de la presente Sentencia, se desestima y se ordena el archivo de la querella instada en contra del Lcdo. Miguel A. Alverio Sánchez, por entender que éste no cometió las infracciones imputadas.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. La Juez Asociada señora Rodríguez Rodríguez no intervino.

Dimarie Alicea Lozada
Secretaria del Tribunal Supremo Interina