per curiam:
El Ledo. José R. Ríos Ríos (querellado) fue admitido a la práctica de la abogacía por el Tribunal Supremo de Puerto Rico el 3 de enero de 1990 y al ejercicio del notariado el 4 de septiembre de 1990. El 4 de junio de 2004 los esposos Samuel E. Monge Pastor y Celia M. López González presentaron una queja juramentada, aduciendo que el licenciado Ríos Ríos los representó en un caso de daños y perjuicios y no incluyó como demandantes a la esposa del señor Monge y a la Sociedad de Bienes Ganan-ciales compuesta por ambos, lo que permitió que prescri-biera cualquier acción que tuvieran éstas a su favor.(1) Adujeron, también, que el querellado no los mantuvo infor-mados de los incidentes del caso y lo transigió sin su auto-rización y conocimiento. Además, señalaron que el licen-ciado obtuvo y retuvo un cheque por la suma de $18,000 emitido por American Internacional Insurance Co., asegu- *62 radora de Las Piedras Construction, el 23 de diciembre de 2002 y lo depositó en una cuenta del Banco Popular de Puerto Rico el 30 de diciembre de 2002. Expusieron que requirieron al querellado que les entregara su expediente y éste no lo hizo, sino que dispuso de éste sin haberles con-sultado ni informado.
Posteriormente, los quejosos presentaron una demanda civil por impericia profesional contra el querellado, la cual fue transigida. El 10 de febrero de 2005, el señor Monge Pastor informó al Procurador General, en una carta diri-gida a la Secretaria de este Tribunal, que no deseaba con-tinuar con su queja por haber llegado a un acuerdo con el licenciado Ríos Ríos. No obstante, el Procurador General continuó su investigación, pues, según hemos resuelto, una transacción de esta índole no requiere que se archive la queja.(2)
El 3 de febrero de 2006, ordenamos al Procurador General que presentara una querella sobre conducta profesional contra el licenciado Ríos Ríos. En la querella presentada el 31 de marzo de 2006, el Procurador General le imputó al licenciado Ríos Ríos haber violado los Cánones 18, 19, 20, 23 y 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. El querellado contestó la querella y el 13 de febrero de 2007 designamos a la Leda. Crisanta González Seda como Comisionada Especial para recibir la prueba y rendir un informe con determinaciones de hechos y las recomenda-ciones que estimara pertinentes. Luego de varios trámites procesales, se celebró la vista adjudicativa el 28 de agosto de 2007. Ese día compareció el querellado, personalmente y representado por el Ledo. Rafael Román Pérez. La Ofi-cina del Procurador General estuvo representada por la Procuradora General Auxiliar, Leda. Minnie H. Rodríguez.
*63 I
El Procurador General alega, primeramente, que el Ledo. José R. Ríos Ríos violó el Canon 18 del Código de Etica Profesional, supra, pues no ejerció el cuidado y la diligencia necesarios en la gestión encomendada al no in-cluir entre los demandantes a la esposa del señor Monge y a la Sociedad de Legal de Gananciales compuesta por ellos. El licenciado Ríos Ríos, según alegado, no consultó a su cliente ni obtuvo su aprobación respecto a esta decisión, que resultó en que se perdiera cualquier acción que hubie-ran tenido estas partes.
Al negar este cargo, el querellado alegó que a quien los querellantes contrataron inicialmente para que los repre-sentara en el caso civil que da lugar a la presente queja fue al Ledo. José A. Mojica Mojica, quien a su vez subcontrató al querellado. Adujo que preparó la demanda con los datos suplidos por el licenciado Mojica Mojica y que no se le in-formó que el señor Monge Pastor estuviera legalmente ca-sado con la señora López González, o que ésta, la Sociedad de Legal de Gananciales o los hijos del querellante hubie-ran sufrido daños. Sólo recibió información de los daños físicos sufridos por el señor Monge Pastor. Por eso incluyó como demandante al señor Monge Pastor y no a su esposa ni a la sociedad ganancial. El querellado expuso, además, que el señor Monge Pastor tenía pleno conocimiento del contenido y de las alegaciones de la demanda. Indica que ejerció el cuidado y la diligencia necesarios para cumplir con la gestión encomendada, ya que logró una transacción favorable para su representado, por dieciocho mil dólares ($18,000), los que compensaban los daños realmente sufri-dos por el señor Monge Pastor.
En segundo lugar, el Procurador General expone que el Ledo. José R. Ríos Ríos incumplió con su deber de mante-ner informado a su cliente de todo aspecto importante del caso, como requiere el Canon 19 del Código de Etica Profe- *64 sional, supra, al no incluir como demandantes a la Sra. Celia M. López González y la Sociedad Legal de Ganancia-les compuesta por ésta y su esposo, al no mantenerlos in-formados del trámite del caso, al transigir el caso sin el consentimiento de sus clientes y al obtener el pago acor-dado en dicha transacción sin informárselo.
Por su parte, el querellado alegó que el querellante se mantenía informado sobre el curso del caso por medio del licenciado Mojica Mojica y que, además, participó en la re-visión del texto de la demanda, la contestación a interro-gatorios, la comparecencia a deposiciones y la discusión de la oferta de transacción. De igual manera, el querellado afirma que obtuvo el consentimiento del señor Monge Pastor para transigir su reclamación por la cantidad indicada y que prueba de ello es que éste aceptó y cambió el cheque por la cantidad de $12,000, que era lo que le correspondía luego de restar los honorarios de abogado.
El Procurador General también alega que el licenciado Ríos Ríos no fue sincero ni honrado con sus clientes, en violación al Canon 35 del Código de Etica Profesional, supra. El querellado niega esto y afirma, según explica-mos, que el querellante conocía sobre las negociaciones con la parte demandada que concluyeron con la oferta de $18,000, la cual fue notificada y aceptada por el señor Monge Pastor.
También se le imputa al licenciado Ríos Ríos una viola-ción al Canon 20 del Código de Ética Profesional, supra, por no haber entregado el expediente del caso a sus clien-tes una vez éstos se lo requirieron. Aduce el Procurador General que el licenciado Ríos Ríos dispuso de dicho expe-diente sin el conocimiento, consentimiento y aprobación de sus clientes.
Respecto a esto, el querellado alegó que informó a su cliente que podía recoger su expediente y que éste no lo hizo. Señala que es costumbre de su oficina que si el cliente no recoge su expediente, se dispone de éste una vez se ter- *65 minan los procedimientos judiciales y se paga la compen-sación que corresponde al cliente. Cuando el señor Monge finalmente solicitó el expediente, no fue posible entregár-selo porque aparentemente se había extraviado durante la mudanza de oficina del querellado.
El quinto cargo de la querella presentada por el Procu-rador General sostiene que el Ledo. José R. Ríos Ríos violó el Canon 23 del Código de Etica Profesional, supra, al re-cibir y retener indebidamente el cheque por $18,000 pro-ducto de la transacción habida en el caso DDP-1999-0109.
Por su parte, el querellado alega que no recibió ni re-tuvo indebidamente el cheque producto de la transacción. Señala que el uso y la costumbre en su oficina es depositar en la cuenta de ésta los cheques que son producto de las transacciones, con el consentimiento de los clientes, para luego entregarles el dinero que les corresponda. En este caso, alega que no se hizo el pago al señor Monge Pastor con la premura acostumbrada por un error de buena fe provocado por una condición personal y familiar del quere-llado, relacionada con la salud de la madre de los hijos menores del querellado. Por motivo de esta situación, el licenciado Ríos Ríos tuvo que recibir tratamiento psicológico.
II
Surge del Informe de la Comisionada Especial que el Procurador General no presentó testigos, sino que solicitó, sin objeción del querellado, que se marcaran como exhibit los expedientes de la queja AB-2004-196, del caso civil Núm. DDP-1999-0109 —Samuel E. Monge Pastor v. Las Piedras Construction, Tribunal de Primera Instancia, Sala Superior de Bayamón— de la demanda civil por impericia profesional presentada contra el querellado en el Tribunal de Primera Instancia, Sala Superior de San Juan, Caso Núm. KPD-2004-0452 y de la carta, suscrita por los que- *66 reliantes el 10 de febrero de 2005, mediante la cual retiran la querella como condición del acuerdo transaccional que concluyó la demanda sobre impericia profesional.
Por su parte, el querellado sometió, sin reparo de la Pro-curadora General Auxiliar, una declaración jurada de la sicóloga, Dra. Ada Rosabal. Presentó, además, el testimo-nio del Ledo. José A. Mojica Mojica. Este se reiteró en su declaración jurada de 18 de julio de 2007 y fue contrainte-rrogado por la Procuradora General Auxiliar.
Una vez sometido el caso, el querellado presentó una Moción de Desestimación, en la que adujo que la querella presentada por el Procurador General se fundamentó en la declaración jurada de los quejosos, señor Monge Pastor y señora López González, y que al no presentar el testimonio de éstos en la vista adjudicativa y someterse el caso por el expediente, se violó su derecho a contrainterrogarlos y, por lo tanto, su derecho al debido proceso de ley. Adujo, ade-más, que al admitir la declaración jurada en evidencia se violó la Regla 14(j) del Reglamento del Tribunal Supremo, que dispone que “[l]a parte querellada tendrá derecho a confrontar [a] los testigos en su contra durante la vista ...”. (Corchetes en el original.) 4 L.P.R.A. Ap. XXI-A. También alegó que al presentarse para probar la veracidad de su contenido, la declaración jurada era prueba de referencia que no podía admitirse a menos que el Procurador General demostrase que los testigos no estaban disponibles, lo cual no hizo. Denegamos la solicitud de desestimación el 25 de enero de 2008.
El 10 de marzo de 2008 la Comisionada Especial rindió su informe, exponiendo los hechos que encontró probados. Concluyó la Comisionada que el querellante contrató al Ledo. José A. Mojica Mojica para que le tramitara un caso relacionado con un accidente de automóvil en el que se vio involucrado y que el licenciado Mojica refirió el asunto al licenciado Ríos Ríos. Este, a su vez, presentó una demanda *67 en reclamación de daños a nombre del querellante.(3) El estado civil del querellante se identifica en la demanda como soltero. Además, se identifica al querellante como el dueño del automóvil involucrado en el accidente, que se alegó fue pérdida total, y que en la querella se alega que era propiedad de la Sociedad Legal de Gananciales.
Según determinó la Comisionada Especial, ni el licen-ciado Mojica ni el querellado redujeron a escrito su con-trato de representación legal con el querellante. Tampoco pusieron por escrito los datos que recogiera el licenciado Mojica en la entrevista inicial que hiciera al querellante. El licenciado Mojica testificó que no recuerda si se le pre-guntó al querellante si era soltero o casado, pero sí que éste acostumbraba visitar su oficina a vender artículos de computadoras y realizar trabajos en las computadoras, y que nunca le habló de su esposa o de daños que ésta hu-biera sufrido. Nunca la vio ni habló con ella y su impresión era que el querellado era soltero.
El licenciado Ríos Ríos no entrevistó al querellante antes de redactar la demanda, sino que lo hizo con la infor-mación provista por el licenciado Mojica Mojica. Sin embargo, el licenciado Mojica no aparece como representante legal ni en la demanda ni en ningún otro documento del caso. El querellado firmó la demanda como representante legal del querellante.
La Comisionada Especial concluyó que el querellante visitaba la oficina del licenciado Mojica alrededor de dos veces al mes y hablaba del caso, pero que no era una con-versación de abogado y cliente. El licenciado Mojica supo del trámite del caso a través del querellante, no a través del querellado. En esas conversaciones, el querellante le habló al licenciado Mojica de una oferta de transacción y el *68 abogado le explicó las razones por las cuales debía aceptar los $18,000 que le ofrecían. Luego de la conversación sobre la oferta de transacción, el querellante no regresó a la ofi-cina del licenciado Mojica.
Según el Informe de la Comisionada Especial, el expe-diente del caso civil Núm. DDP-1999-0109, supra, revela que el querellado lo litigó de manera diligente, vigorosa y continua desde que presentó la demanda el 9 de febrero de 1999. Ambas partes llevaron a cabo un descubrimiento de prueba completo, incluyendo interrogatorios y deposi-ciones. El querellante contestó uno de los interrogatorios y también se le tomó una deposición. El 18 de diciembre de 2002, la parte demandante en el caso civil, representada por el querellado, presentó una moción de desistimiento en la que informó al Tribunal de Primera Instancia que las partes habían concretado un acuerdo transaccional. A esa fecha, se había señalado el juicio y se habían expedido las citaciones para los testigos de la parte demandante, solici-tadas por su representante, el abogado querellado.
No hay en el expediente algún escrito sobre un acuerdo transaccional u otro documento firmado por el querellante aceptando la oferta de transacción. Como resultado de la transacción, el licenciado Ríos Ríos recibió el cheque nú-mero 174064, de American Internacional Insurance Co. of P.R., fechado el 23 de diciembre de 2002. Este fue girado a nombre suyo y del señor Monge. El cheque fue endosado con el nombre del señor Monge y la firma del licenciado Ríos Ríos, y depositado en una cuenta de este último el 30 de diciembre de 2002. No se notificó de ello al querellante, señor Monge. La firma del señor Monge que aparece en el cheque no coincide con su firma en otros documentos.
El 28 de marzo de 2003, casi tres meses después que se entregara el cheque al querellado, el querellante recibió un pago de $12,000. La diferencia de $6,000 correspondía al pago de honorarios al querellado.
*69 Durante todo este trámite, el querellante nunca cues-tionó el hecho de que no se hubiera incluido a su esposa y a la Sociedad Legal de Gananciales como partes demandan-tes en el pleito, ni proveyó evidencia alguna de daños su-fridos por éstas. Según determinó la Comisionada Especial, el único daño atribuible a la sociedad ganancial en el accidente es la pérdida del vehículo de motor y esto se re-clamó en la demanda, aunque a nombre del querellante y no de la Sociedad Legal de Gananciales.
Una vez terminó el procedimiento judicial y se pagó la compensación al querellante, el querellado dispuso del ex-pediente del caso sin la autorización del cliente.
El 26 de marzo de 2004, el querellante y su esposa, la Sra. Celia M. López González —también querellante en este caso— demandaron al querellado reclamando daños y peijuicios por impericia profesional.(4) El 17 de febrero de 2005 se suscribió un acuerdo privado y confidencial entre los querellantes y el querellado para dar fin a la demanda, según el cual el querellado pagaría $5,000 a los querellan-tes sin aceptar responsabilidad por lo alegado en la de-manda y éstos lo relevarían de cualquier responsabilidad como consecuencia de los hechos que dieron lugar a la demanda. Según el acuerdo, se pagarían $2,500 una vez los querellantes presentaran ante el Tribunal Supremo de Puerto Rico y en la Oficina del Procurador General, una carta en la que expresamente manifestaran su deseo de retirar la queja en este caso. El segundo pago de $2,500 se haría dentro de los 30 días siguientes a la firma del acuerdo por los querellantes. La carta se presentó el 18 de febrero de 2005, y el 22 de febrero de 2005 los querellantes desistieron con peijuicio de su demanda. El 4 de marzo de 2005, el Tribunal de Primera Instancia ordenó el archivo y sobreseimiento de la demanda, con perjuicio.
*70 Por último, la Comisionada Especial determinó que el querellado se afectó emocionalmente ante la situación de sus hijos, debido a la muerte de la madre de éstos. Señala que el impacto de la muerte de la madre de los hijos del licenciado Ríos Ríos pudo ocasionar que éste descuidara los asuntos de su oficina.
III
En numerosas ocasiones hemos expresado que el objetivo de los cánones del Código de Etica Profesional es propiciar que los abogados se desempeñen, profesional y personalmente, de acuerdo con los más altos principios de conducta decorosa para beneficio de la profesión, de la ciudadanía y de las instituciones de justicia del país. In re Pujol Thompson, 171 D.P.R. 683 (2007). Es en este contexto que debemos evaluar la conducta del querellado y los hechos antes reseñados.
Al querellado se le imputa haber violado el Canon 18 del Código de Etica Profesional, supra, que impone al abogado el deber de defender los derechos de su cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable. In re Laureano Molina, 161 D.P.R. 58 (2004); In re Colón Ortiz, 171 D.P.R. 855 (2007). Viola este canon quien no emplee la mayor capacidad, lealtad, responsabilidad, efectividad y más completa honradez en la defensa de los intereses de su cliente. In re Meléndez La Fontaine, 167 D.P.R. 111 (2006); In re Alonso Santiago, 165 D.P.R. 555 (2005).
La desidia, el desinterés, la inacción y la displicencia como patrón de conducta en la representación del cliente violan las disposiciones de este canon. In re Vilches López, 170 D.P.R. 793 (2007); In re Padilla Pérez, 135 D.P.R. 770, 776 (1994). Entre las acciones de un abogado o una abogada que infringen este canon están aquellas ac- *71 tuaciones negligentes que puedan conllevar, o que en efecto conlleven, la desestimación o el archivo de un caso. In re Colón Morera, 172 D.P.R. 49 (2007).
El Canon 19 del Código de Ética Profesional, supra, requiere que el abogado mantenga a su cliente siempre informado de todo asunto y toda gestión importante que surja en el desarrollo del caso que le ha sido encomendado y que no esté dentro del ámbito de discreción de la representación legal, e incluye cumplir con las instrucciones de los representados. In re Acosta Grubb, 119 D.P.R. 595, 603 (1987). Sobre las transacciones de los casos, dis-pone que siempre que la controversia sea susceptible de un arreglo o transacción razonable, el abogado debe aconsejar al cliente que evite o termine el litigio. El abogado debe notificar a su cliente de cualquier oferta de transacción hecha por la otra parte. Canon 19 del Código de Ética Profesional, supra. Este deber de los abogados se configura como una obligación ética independiente. Véase In re Hernández Pérez, 169 D.P.R. 91 (2006).
Sobre dicho canon hemos expresado que “[ejl deber de informar al cliente es un elemento imprescindible de la relación fiduciaria del abogado y el cliente”. In re Alonso Santiago, supra, pág. 563. Véase In re García Muñoz, 170 D.P.R. 780 (2007). Por consiguiente, cuando un abogado mantiene a su cliente ajeno a las incidencias de su caso, ello constituye una violación, no sólo al Canon 19, supra, sino al proceso de impartir justicia en general. In re Laborde Freyre, 149 D.P.R. 59 (2003).
Se viola el Canon 19, supra, cuando no se atienden los reclamos de información del cliente, no se le informa sobre los asuntos importantes que surjan del caso ni del resultado adverso de la gestión encargada, no se mantiene al cliente al tanto del estado o la situación procesal del caso, o simplemente se niega al cliente información del caso. Véanse: In re Acevedo Álvarez, 143 D.P.R. 293, 298 *72 (1995); In re Rosario, 116 D.P.R. 462, 467 (1985); In re Acosta Grubb, supra, pág. 603. Según reiteramos en In re Ayala Torres, 150 D.P.R. 288 (2000), uno de los asuntos importantes a los que se refiere el Canon 19, supra, com-prende la notificación al cliente de que se dictó sentencia. Esta notificación ha de ser inmediata, en tiempo para que el cliente tome la decisión que éste interese sobre los pro-cedimientos disponibles para revisarla. Colón Prieto v. Géigel, 115 D.P.R. 232, 241 (1984).
El Canon 20 del Código de Ética Profesional, supra, establece el procedimiento que deben seguir los abogados al renunciar a la representación legal de un cliente. En lo pertinente, este canon requiere que al ser efectiva tal renuncia, el abogado debe entregar el expediente y todo documento relacionado con el caso a su cliente, además de reembolsarle inmediatamente cualquier cantidad que éste le haya pagado por adelantado en honorarios por servicios que no se han prestado.
Hemos interpretado este canon en el sentido de que no debe haber dilación alguna en la entrega del expediente una vez el abogado concluye las gestiones para las cuales fue contratado o cuando el cliente solicita dicha entrega. In re Franco Rivera, 169 D.P.R. 237 (2006). De igual forma, la devolución del expediente no puede estar sujeta a ninguna condición, pues el abogado no tiene derecho de retención sobre los documentos y papeles del cliente, ni tiene un gravamen sobre el producto de una sentencia o un dictamen judicial. In re Irizarry, González, 151 D.P.R. 916, 922 (2002); In re Santos Rivera, 172 D.P.R. 703 (2008).
El Canon 23 del Código de Ética Profesional, supra, en lo pertinente al presente asunto, dispone que por razón de la naturaleza fiduciaria de las relaciones entre abogado y cliente, éstas deben estar fundadas en la honradez absoluta. En particular, el abogado debe dar pronta cuenta del dinero y de otros bienes del cliente que vengan a *73 su posesión y no debe mezclarlos con sus propios bienes ni permitir que eso suceda.
En torno a esta obligación, hemos recalcado que “los abogados deben velar por que la relación abogado-cliente sea transparente”. In re Álvarez Aponte, 158 D.P.R. 140, 146 (2002). Véase In re Rivera Irizarry, 155 D.P.R. 687, 693 (2001). La naturaleza fiduciaria de esta relación exige con-fianza y absoluta honradez entre el abogado y el cliente, especialmente en los asuntos de carácter económico. Por consiguiente, el abogado debe rendir cuentas de cualquier dinero o bien de un cliente que esté en su posesión, porque “[l]a retención de cualquier cantidad de dinero, pertene-ciente a sus clientes, trastoca e infringe los postulados del Canon 23 del Código de Etica Profesional, ante, y demues-tra un menosprecio hacia sus deberes como abogado”. In re Rivera Irizarry, supra, pág. 693.
La mera retención por un abogado de fondos pertenecientes a un cliente justifica una sanción, independientemente de que el abogado los hubiera devuelto y de que los hubiera retenido sin intención de apropiárselos. In re Rivera Irizarry, supra, pág. 693. En efecto, “la dilación en la devolución de los fondos es causa suficiente para tomar medidas disciplinarias contra el abogado”. Íd., pág. 694. Véase In re Feliciano Rodríguez, 150 D.P.R. 859, 864 (2000).
El Canon 35 del Código de Ética Profesional, supra, establece, en lo pertinente, que la conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros, debe ser sincera y honrada. Este precepto impone a todo abogado la obligación de regirse por unas normas mínimas de conducta, indispensables para promover el honor y la dignidad de la profesión. In re López de Victoria I, 163 D.P.R. 1, 8 (2004); In re Montañez Miranda, 157 D.P.R. 275, 281 (2002). En conformidad con tales postulados éticos, se ha señalado que el abogado no puede proveer al *74 tribunal información falsa o que no se ajuste a la verdad, ni puede ocultarle información verdadera que deba ser revelada. In re Filardi Guzmán, 144 D.P.R. 710, 717-718 (1998). Evidentemente, ante una imputación de violación al referido Canon 35 no es defensa el que no se haya obrado de mala fe, deliberadamente o con la intención de engañar o defraudar. Tampoco importa que no se haya causado daño a un tercero. In re Astacio Caraballo, 149 D.P.R. 790, 799 (2000).
Las alegaciones presentadas por el Procurador General en este caso están fundamentadas, en gran medida, en la declaración jurada de los esposos Monge Pastor y López González, requerida al presentarse una queja ante este Tribunal y que forma parte de los autos del caso. Sin embargo, los quejosos no testificaron durante la vista. Por esa razón, debemos determinar si el Procurador cumplió con el grado de prueba requerida para demostrar la violación a los cánones de ética profesional.
En In re Caratini Alvarado, 153 D.P.R. 575, 685 (2001), resolvimos que el criterio a utilizarse por este Tribunal en los casos disciplinarios es el de prueba clara, robusta y convincente. Véanse, además: In re Mulero Fernández, 174 D.P.R. 18 (2008); In re Irizarry Pérez II, 173 D.P.R. 282 (2008); Tal determinación se basa en que los casos disciplinarios contra los miembros de este foro inciden sobre el derecho de los abogados a ganarse su sustento, que es indudablemente un derecho fundamental. Amy v. Adm. Deporte Hípico, 116 D.P.R. 414, 421 (1985). Para dichos casos —es decir, para la negación de un derecho fundamental— el debido proceso de ley exige que el valor y la suficiencia de la prueba sean medidos con un criterio más riguroso que el de la preponderancia de la prueba (utilizado en procedimientos civiles comunes) sin que le aplique el criterio de “prueba más allá de duda razonable” (utilizado en el campo criminal). P.P.D. v. Admor. Gen. de Elecciones, 111 D.P.R. 199, 223 (1981); In re Caratini Alvarado, supra.
*75 Por otro lado, el debido proceso de ley en su vertiente procesal impone al Estado la obligación de garantizar que la interferencia con el interés propietario o libertario del individuo se haga mediante un procedimiento justo y equitativo que respete la dignidad de los individuos. Art. II, Const. E.L.A., L.P.R.A., Tomo 1; Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 D.P.R. 881, 887-888 (1993). Los abogados tienen un interés propietario en el ejercicio de la profesión, por lo cual son acreedores de las garantías de un debido proceso de ley en aquellos procedimientos disciplinarios en que esté en juego su licencia. In re Deynes Soto, 164 D.P.R. 327 (2005); In re Caratini Alvarado, supra. Véase, además, In re Ruffalo, 390 U.S. 544, 550 (1968). Las exigencias mínimas del debido proceso de ley constitucional incluyen el ser notificado adecuadamente de los cargos en su contra, la oportunidad de ser oído, el derecho a contrainterrogar y el derecho a examinar la prueba documental y material presentada por la otra parte. Salvá Santiago v. Torres Padró, 171 D.P.R. 332 (2007); Rivera Rodríguez & Co. v. Lee Stowell, etc., supra.
Acorde a lo anterior, la Regla 14(j) del Reglamento del Tribunal Supremo, supra, establece el derecho de la parte querellada en un procedimiento disciplinario a confrontar y contrainterrogar a los testigos en su contra. Sobre la importancia del derecho a contrainterrogar, el tratadista Wigmore asevera: “it is beyond any doubt the greatest legal engine ever invented for the discovering of truth.” 5 Wigmore, Evidence in Trials at Common Law Sec. 1367, pág. 29 (3ra ed. 1974).
Cabe recordar, además, que la Regla 60 de Evidencia excluye, como norma general, la prueba de referencia, esto es, las declaraciones que se hacen fuera de la vista o del juicio en el que se ofrecen para probar que tal declaración es verdadera. 32 L.P.R.A. Ap. IV. El profesor Chiesa explica que la prueba de referencia se excluye por su falta de confiabilidad y por su dudoso valor probatorio, basado, *76 precisamente, en la falta de confrontación entre el declarante y la parte contra la que se ofrece la evidencia. E.L. Chiesa, Tratado de Derecho Probatorio, Santo Domingo, Ed. Corripio, 1998, T. II, págs. 616 y 631. La confrontación es necesaria para disipar la ambigüedad de la declaración, la sinceridad, la percepción y la memoria del declarante, íd. Véase, además, Pueblo v. García Reyes, 113 D.P.R. 843, 853 (1983).
Por último, cuando el quejoso retira la queja, tiene efecto la norma reiterada de que los procedimientos disciplinarios ante este Tribunal son independientes de las acciones legales, civiles o criminales que se deriven de la misma relación de hechos. In re Deynes Soto, supra; In re Laborde Freyre, supra, pág. 63. Por lo tanto, no limita nuestra jurisdicción el hecho de que el abogado y el cliente transijan sus diferencias mediante un acuerdo en el cual el segundo se compromete a no presentar cargos éticos ante los foros pertinentes. In re Pagán Ayala, 117 D.P.R. 180, 187 (1986).
Sin embargo, también hemos resuelto que el Canon 26 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, no prohíbe que un abogado informe y acepte ante su cliente su responsabilidad por errores y omisiones atribuibles a su persona. In re Pagán Ayala, supra, págs. 186-187. Tampoco le impide indemnizar al perjudicado, ya sea extrajudicialmente o mediante un contrato de transacción judicial. Lo que tal principio ético está dirigido a evitar es que el abogado limite, se exonere o evada, contractualmente o de otro modo, su responsabilidad profesional. En otras palabras, en forma alguna el abogado puede establecer como condición para transigir con su cliente la acción civil en daños por mala práctica profesional, que no se presente una querella por violación ética en su contra.
Por otro lado, una vez satisfecho el perjuicio privado de la persona afectada, en ausencia de un interés público mayor, de ordinario el asunto no debe trascender. In re Pagán *77 Ayala, supra, pág. 187. La admisión de responsabilidad civil y el resarcimiento por el abogado a su cliente constitui-rán atenuantes, o podrá ser determinante para su archivo, si es que finalmente se insta una querella. íd.
IV
A la luz de los hechos probados y de los preceptos legales y normas jurídicas aplicables, la Comisionada Especial concluyó que el licenciado Ríos Ríos incurrió en violaciones a los Cánones 19, 20, 23 y 35 del Código de Ética Profesio-nal, supra. Sin embargo, determinó que la evidencia no sostiene la imputación de violación al Canon 18 del Código de Ética Profesional, supra. Resolvemos que son correctas ambas conclusiones.
En lo que respecta al Canon 18, supra, el Procurador General alega que el licenciado Ríos Ríos no ejerció el cui-dado y la diligencia necesarios en la gestión encomendada al dejar fuera de la demanda incoada a la esposa del señor Monge y a la Sociedad Legal de Gananciales compuesta por ambos, decisión que, según expone, no fue consultada ni aprobada por sus clientes y que resultó en que se per-diera cualquier acción que hubieran tenido estas partes. Sin embargo, los hechos probados demuestran que esta alegación no se sostiene.
Los esposos Monge López no declararon en la vista y no estuvieron disponibles para ser contrainterrogados. Según expusimos antes, esto es un derecho garantizado por nues-tro reglamento y por el debido proceso de ley. El licenciado Mojica, quien sí declaró personalmente y fue contrainterro-gado, sostuvo en sus declaraciones que recibió la versión del querellante sobre el accidente y éste nunca le mencionó que su esposa o algún otro familiar hubiera recibido algún daño como consecuencia de tales hechos. El señor Monge nunca mencionó tener esposa en las conversaciones con el licenciado Mojica. Éste no recordó si el querellante le dijo *78 que era casado o soltero, pero su impresión era que era soltero. El licenciado Mojica refirió el caso al licenciado Ríos Ríos, quien presentó la demanda el 9 de febrero de 1999, apenas un mes y medio después del accidente.
Sin duda, fue un serio error del licenciado Ríos Ríos el no entrevistar a quien se convirtió en su cliente antes de presentar la demanda y depender exclusivamente de los datos provistos por el licenciado Mojica. Sin embargo, un examen del escrito de demanda revela que éste es ade-cuado, contiene alegaciones e información suficiente para el inicio del pleito y para sostener tales alegaciones. El expediente del caso relacionado con el accidente del señor Monge también revela que el licenciado Ríos Ríos litigó de manera adecuada, vigorosa, en defensa de los intereses de su cliente —el querellante— y que demostró diligencia du-rante el procedimiento, conocimiento de las controversias, capacidad y efectividad.
Por otra parte, concurrimos con la Comisionada Especial en que la contestación del pliego de interrogatorio que la parte codemandada sometió al demandante, sin duda requirió que el señor Monge discutiera las contestaciones con su abogado y luego juramentara las contestaciones. Por eso no es creíble que el señor Monge no supiera que la demanda se redactó solamente a su nombre, al menos para el mes de junio cuando el licenciado Ríos Ríos solicitó que se señalara una conferencia sobre el estado de los procedi-mientos e informó que se había contestado el interrogatorio. A esa fecha faltaban casi seis meses para que prescribiera la acción de daños, si alguna, que pudie-ran tener su esposa y la sociedad de gananciales. Por todo lo anterior resolvemos que el licenciado Ríos Ríos no violó el Canon 18, supra, como se le imputa.
Coincidimos con la Comisionada Especial en que el ver-dadero problema ético que revelan los hechos probados ra-dica en que el licenciado Ríos Ríos no informó a su cliente sobre el evento más importante del caso que le fue éneo- *79 mendado, esto es, la terminación del pleito por transacción y la sentencia emitida por el Tribunal de Primera Instan-cia mediante la cual se desestimó la demanda con perjuicio. Además, no le informó inmediatamente que ha-bía recibido una cantidad de dinero que pertenecía al cliente.
No tenemos duda que el señor Monge conocía que había una oferta de transacción y la cantidad que le estaban ofre-ciendo, conforme surge del testimonio del licenciado Mo-jica, y podemos inferir razonablemente que obtuvo dicha información del licenciado Ríos Ríos. Sin embargo, si bien no consideramos las aseveraciones del señor Monge en su declaración jurada, a los efectos de que no aprobó la tran-sacción ni supo de la terminación del juicio, la realidad es que tampoco hay en el expediente prueba alguna que de-muestre o de la que podamos inferir que el señor Monge finalmente aceptó dicha transacción, según fue informado al Tribunal de Primera Instancia para justificar el desisti-miento voluntario, con perjuicio, de la demanda.
El licenciado Ríos Ríos alega en su contestación que le informó a su cliente que se dictó una sentencia que puso fin al pleito y que había recibido un cheque por $18,000 como pago del acuerdo transaccional. No presentó prueba al-guna a esos efectos. Los hechos probados sostienen, por el contrario, que al licenciado Ríos Ríos se le entregó el che-que y éste lo aceptó como pago final y lo depositó en una cuenta bancaria de la oficina, sin informárselo al cliente. Además, el cheque fue endosado, con el nombre del señor Monge, sin su autorización. Estas actuaciones del licen-ciado Ríos Ríos violan el Canon 19 del Código de Ética Profesional, supra, según adujo el Procurador General.
La prueba establece que el licenciado Ríos Ríos no dio pronta cuenta o entregó a su cliente la parte que le corres-pondía del dinero que la compañía aseguradora pagó como resultado del acuerdo transaccional que puso fin al pleito. Por el contrario, no es hasta tres meses después que se *80 recibió el cheque, que el licenciado Ríos Ríos le entrega al querellante la parte que le correspondía. La explicación o justificación que ofrece el licenciado Ríos Ríos, en el sen-tido de que el uso y costumbre de su oficina era depositar los cheques de las transacciones en una cuenta de la ofi-cina para luego entregar el dinero a los clientes, no puede excusar esta violación ética. Ningún abogado puede esta-blecer procedimientos en su oficina que sean contrarios a sus obligaciones éticas. Por ello, tal explicación no excusa la violación al Canon 23, supra, que, en lo concerniente al manejo de los bienes de los clientes, prohíbe la retención y disposición inapropiada de cualquier suma de dinero que pertenezca a éstos. En este caso, el abogado pospuso el acto de entrega de dinero su cliente, dinero que era el producto de la transacción del caso. Tal hecho nunca estuvo en con-troversia, porque el propio licenciado Ríos Ríos lo aceptó. Es por ello que entendemos que el licenciado Ríos Ríos in-currió en la conducta que se le imputa de violar el Canon 23 del Código de Etica Profesional, supra.
Respecto a la violación al Canon 20, supra, se alega que el licenciado Ríos Ríos dispuso del expediente del caso sin la autorización del cliente. La evidencia recibida así lo establece. El licenciado Ríos Ríos no respondió en forma alguna a la solicitud de entrega del expediente que le hizo su cliente. Tampoco cumplió con dicha entrega, a pesar de la orden a esos efectos dictada por el Tribunal de Primera Instancia en el caso civil Núm. KDP-2004-0452, Samuel E. Monge Pastor y otros v. José R. Ríos y otros, el 8 de septiembre de 2004. El 18 de noviembre de 2004, el abogado que representaba al señor Monge Pastor y a su esposa en ese caso solicitó que se impusieran sanciones al licenciado Ríos Ríos por no haber entregado el expediente. Este, en-tonces, presentó varias excusas en una moción de 13 de diciembre de 2004. Expuso que entendía que había entre-gado el expediente, que luego se percató de que no lo tenía —pues es su costumbre disponer de los expedientes una *81 vez se terminan los procedimientos judiciales y se paga la compensación correspondiente al cliente— y que no podía entregar lo que no tenía.
Por las razones que hemos expresado, ningún abogado puede establecer procedimientos en su oficina que violen las disposiciones de los cánones de ética profesional. La realidad es que el expediente nunca fue entregado y las excusas ofrecidas por el licenciado Ríos Ríos no son satis-factorias, por lo que resolvemos que violó el Canon 20 del Código de Ética Profesional, supra.
La prueba recibida, como ya hemos explicado, establece que el licenciado Ríos Ríos recibió un cheque en pago de la transacción del caso en el que representaba al señor Monge y que dicho cheque se expidió a nombre de éste y del licen-ciado Ríos Ríos, quien endosó —o permitió que otra persona lo hiciera— escribiendo el nombre del señor Monge sin estar autorizado para ello. También establece que el licenciado Ríos Ríos no informó al cliente que había reci-bido un cheque y que lo había depositado en una cuenta de la oficina. Por último, la prueba también establece que el licenciado Ríos Ríos dispuso del expediente del caso sin informarlo al señor Monge, ofreciendo explicaciones que denotan un manejo inapropiado y descuidado de dicho expediente. Tales actuaciones reflejan y constituyen una falta de sinceridad y honradez para con su representado. Se apartan del deber que tenemos los abogados y las abo-gadas de exaltar el honor y la dignidad de la profesión. Por ello, resolvemos que la prueba estableció que el licenciado Ríos Ríos violó del Canon 35 del Código de Ética Profesio-nal, supra, conforme lo imputó por el Procurador General.
V
Hemos señalado que cuando se demuestre que un abogado o abogada ha incurrido en una conducta reñida *82 con los postulados éticos de la profesión legal, determina-remos la sanción disciplinaria adecuada tomando en cuenta los factores siguientes: (i) la buena reputación del abogado en la comunidad; (ii) su historial previo; (iii) si ésta constituye su primera falta y si alguna parte ha resul-tado perjudicada; (iv) la aceptación de la falta y su sincero arrepentimiento; (v) si se trata de una conducta aislada; (vi) el ánimo de lucro que medió en su actuación; (vii) el resarcimiento al cliente, y (viii) cualesquiera otras conside-raciones, ya bien atenuantes o agravantes, que sean perti-nentes según los hechos. Véanse: In re Quiñones Ayala, 165 D.P.R. 138 (2005); In re Montalvo Guzmán, 164 D.P.R. 806 (2005); In re Padilla Rodríguez, 145 D.P.R. 536 (1998).
Acorde con lo anterior, tomamos en consideración que los querellantes se dieron por satisfechos con el resultado de la demanda que presentaron contra el licenciado Ríos Ríos y la indemnización que éste les pagó. Así lo expresa-ron en una carta a la que hemos hecho referencia, y con posterioridad a dicha carta no comparecieron a este procedimiento. También consideramos que el licenciado Ríos Ríos presentó la declaración jurada de la Dra. Ada Rosabal Silva, psicóloga clínica, quien le brindó trata-miento para depresión en fechas no especificadas, pero quien señala que el impacto de la muerte de la madre de los hijos del licenciado Ríos Ríos, en o para el año 2002, pudo ocasionar que éste descuidara los asuntos de su oficina.
Por otra parte, debemos considerar que el licenciado Ríos Ríos no aceptó responsabilidad por los hechos alega-dos en la demanda que luego transó con los querellantes y que puso como condición al pago de lo acordado el que se desistiera de la queja, contrario a lo que establecimos como valor ético en In re Pagán Ayala, supra. Es preciso señalar, además, que hay pendientes ante este Tribunal dos quere-llas adicionales presentadas por el Procurador General contra el licenciado Ríos Ríos.
*83 Considerado todo lo anterior, ordenamos la suspensión del Ledo. José R. Ríos Ríos de la práctica de la profesión por el término de nueve meses.

Se dictará sentencia de conformidad.

 Civil Núm. DDP-1999-0109, Samuel E. Monge Pastor v. Las Piedras Construction.

 El hecho que el abogado haya indemnizado a su cliente no lo exime del trámite disciplinario por infracción al Código de Etica Profesional. In re Padilla Pérez, 135 D.P.R. 770, 777 (1994); In re Acosta Grubb, 119 D.P.R. 595, 604 (1987).

 Caso civil Núm. DDP-1999-0109, Samuel E. Monge Pastor v. Las Piedras Construction, Autoridad de Carreteras de Puerto Rico y la compañía aseguradora —que resultó ser la Cooperativa de Seguros Múltiples de Puerto Rico— en el Tribunal de Primera Instancia, Sala Superior de Bayamón.

 Caso Núm. KPD-2004-0452, Samuel E. Monge Pastor v. José A. Ríos Ríos, Tribunal de Primera Instancia, Sala de San Juan.